IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PAUL ROBERT BUIKEMA, JR.                                               PLAINTIFF

v.                              Civil No. 2:21-cv-02155

SERGEANT BRIAN McGREW,
Sebastian County Sheriff's Department                                  DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Paul Robert Buikema, Jr., under 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P. K. Holmes, III, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on a Motion for Summary Judgment filed by Defendant, Brian McGrew. (ECF No. 59). Plaintiff filed a Response (ECF No. 64), and Defendant McGrew filed a Reply. (ECF No. 65).

### I.     BACKGROUND

Plaintiff filed his original Complaint on September 28, 2021, against Defendant McGrew, who is a Sergeant employed by Sebastian County, Arkansas. (ECF No. 1). At that time, Plaintiff was incarcerated in the Sebastian County Detention Center ("SCDC") serving a sentence because of a judgment of conviction. *Id.* at p. 3. On October 18, 2021, Plaintiff filed an Amended Complaint. (ECF No. 7). He is suing Defendant McGrew in his both his personal and official capacities. *Id.* at p. 5.

Plaintiff describes his personal capacity claim as follows:

Brian McGrew shot me with his JPX gun directly in my right eye. The video of altercation clearly showed me trying to comply. Inmate Stone continued attacking me disregarding Sgt. McGrews orders. Sgt. McGrew shot Stone in his back and walked up closer and shot me in my right eye. Surveillance from BB pod cameras will show this. And medical records from Ennen Eye Clinic will show the trauma

1

>due to excessive force. As of now my vision has not returned completely to my right eye.

(ECF No. 7, pp. 4-5). Plaintiff describes his official capacity claim as "Improper Training of JPX gun." *Id.* at p. 5.

In September 2021, Defendant McGrew took a JPX pepper gun training course. The course included both a classroom component and a field component. He received a 100% score in the course and received his JPX training certificate on September 10, 2021. (ECF Nos. 59-1, p. 2, 59-3, p. 2). Proper use of a JPX pepper spray gun includes two key points of training: (1) that the shooter be at least five feet away before employing the pepper spray gel; and (2), that the shooter aims for the face for proper application of the pepper spray gel. (ECF No. 59-2, p. 34).

According to the affidavit of Defendant McGrew, on September 13, 2021, Plaintiff and another inmate, Stone, got into an altercation in a living area of the SCDC known as the BB Pod. (ECF No. 59-3, p. 1). He states Plaintiff and Stone were initially engaged in a verbal disagreement when Plaintiff initiated a physical altercation by punching Stone. Inmate Stone fell to the floor, then stood back up and began punching Plaintiff in return. Deputy Ryan Sherff attempted to separate Plaintiff and Stone, but he lost grip of them, and the two continued to fight. *Id.*

>Defendant McGrew goes on to state:
>
>I assisted Deputy Sherff in verbally directing Buikema and Stone to stop fighting. When the altercation continued, I approached the inmates with my JPX gun drawn and instructed Deputy Sherff to back away.
>
>After additional warnings that I would deploy my JPX gun if the inmates did not stop fighting, and without backup officers on scene, I made the decision to deploy my JPX gun in an effort to prevent injury to myself and Deputy Sherff by intervening in the fight – and stop additional injury to Stone and Buikema. While standing approximately 8-10 feet away, I deployed one round from my JPX gun, which hit Stone in the side of his head.
>
>When the inmates continue to fight, I gave another verbal warning that I would deploy my JPX gun to no avail. From approximately the same distance, I then

>deployed a second round from my JPX gun, which struck Buikema on the right cheek. At that time, the inmates moved away from one another, and two backup officers entered the area. We then handcuffed Buikema and Stone and took them separately to the intake shower for decontamination.

(ECF No. 59-3, pp. 1-2).

In Defendant McGrew's "Response to Resistance Report" prepared on September 13, 2021, just after the incident occurred, he indicates he deployed his JPX pepper spray gun when he was six feet away from Plaintiff. (ECF No. 64-1, p. 4).

A surveillance camera stationed in the BB Pod common area captured the physical altercation between Plaintiff and Stone. (ECF No. 63). The video was recorded on September 13, 2021, beginning at 9:50 a.m. The surveillance camera is only equipped to record video and does not contain audio. The video shows Plaintiff and Stone engaged in a verbal argument beginning at approximately the 3:40 mark of the video. A physical altercation begins when Plaintiff can be seen punching Stone at approximately the 4:07 mark. At the 4:09 mark, Deputy Ryan Sherff can be seen attempting to separate Plaintiff and Stone, but his attempt is unsuccessful when he loses grip of the inmates at the 4:14 mark. *Id.*

At the 4:21 mark of the video, Defendant McGrew can be seen entering the scene with his JPX gun drawn and motioning for Deputy Sherff to back away. (ECF No. 63). Defendant McGrew deploys one round from his JPX gun at the 4:25 mark. When the inmates continue to fight, Defendant McGrew deploys a second round from his JPX gun at the 4:27 mark. *Id*. At the 4:28 mark, Plaintiff and Stone move away from one another, and Defendant McGrew and Deputy Sherff proceed to handcuff each of them with assistance from two additional officers who enter the common area at the 4:31 mark. *Id.* The entire incident occurred within a 22 second timeframe. *Id.*

According to the affidavit of Sergeant Eddie Smith, the Director of Inmate management at the SCDC, the surveillance video of the incident on September 13, 2021, between Plaintiff and Stone is authentic and was preserved as evidence in accordance with the SCDC's standard procedure for any use of force incident. (ECF No. 59-1, p. 2). Sergeant Smith also states, "in the surveillance video … Sgt. McGrew can be seen standing approximately 8-10 feet away from Mr. Buikema and Mr. Stone when deploying each of the two rounds from his JPX gun." *Id.* at p. 3.

On March 30, 2022, Plaintiff gave his sworn testimony during a deposition. (ECF No. 59-1). Plaintiff admits he started the physical altercation with inmate Stone; that he heard Defendant McGrew warn them he had his JPX pepper stray gun ready to deploy; and that Defendant McGrew was between "seven and nine feet" away when he deployed the JPX gun. *Id.* at pp. 19-22. He also states that within five minutes after he was hit with the pepper spray, "they took me and placed me in a cell or put me in the shower so I could rinse it off of me and then placed in a cell…" *Id.* at p. 22.

On July 5, 2022, Defendant McGrew filed the instant Motion for Summary Judgment, a Statement of Facts, and a supporting Brief arguing: (1) there is no genuine dispute of material fact in this case; (2) he did not use excessive force against Plaintiff; (3) he is entitled to qualified immunity; and (4), there is no basis for an official capacity claim against Sebastian County as the County adequately trained him on the use of the JPX pepper spray gun. (ECF Nos. 59, 60, 61).

Plaintiff filed an unverified Response to the motion arguing, in part:

> … McGrew did his training on 9-10-2021.  3 days after his training he chose to while Plaintiff stood in a non-combative stance, aiming with the laser on his JPX gun, … shot … Plaintiff in his right eye … he had to of been improperly trained to feel it to been justified and shoot Plaintiff while his hands were at his side.  The altercation was over right after the 1st round was fired.  The Plaintiff was shot directly in his right eye from an unsafe distance … Sgt. McGrew having ended the alteration with the first round if being properly trained would have not fired second

4

round. The JPX gun also has a red laser on the end of gun and if property trained Sgt. McGrew should of never been aiming the red dot into Plaintiffs right eye.

(ECF No. 64).

On July 5, 2021, Defendant McGrew filed a Reply arguing he was adequately trained in the use of the JPX pepper spray gun, and he deployed the gun on September 13, 2021, in accordance with the training to end a physical altercation between Plaintiff and inmate Stone. (ECF No. 65).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

5

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

**1. Personal Capacity Claim – Use of Force**

In evaluating an excessive force claim under the Eighth Amendment, the relevant inquiry is whether the force used was applied in a good-faith effort to maintain or restore discipline or was used to maliciously and sadistically to cause harm. *See U.S. v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007). When deciding whether a particular use of force was reasonable, the Court is required to consider whether there was an objective need for force; the relationship between the need and the amount of force used; the threat reasonably perceived by correctional officers; the efforts by the officers to temper the severity of the forceful response; and the extent of the inmate's injuries. *See Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006). The infliction of pain during a prison security measure does not amount to cruel and unusual punishment simply because it may appear, in hindsight, that the degree of force applied for security purposes was unreasonable or unnecessary in the strict sense. *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

In *Burns v. Eaton*, the Eighth Circuit identified five instances where the Court denied summary judgment based on the use of pepper spray: (1) when an officer failed to give any warning the force would be used; (2) there was no apparent purpose other than inflicting pain; (3) the officer used unnecessary "super-soaker" quantities of the chemical; (4) the officer refused to allow the prisoner to wash off the chemical for days; and/or (5) the incident involved use of addition physical force. 752 F.3d at 1140. In *Dodson v. Reed*, 2021 WL 4164678 (N.D. Oklahoma. 2021), the court denied summary judgment when the plaintiff and defendant recalled different distances from

6

which a JPX pepper spray was deployed. The *Dodson* court referred to the training standard of at least five feet away from the target for JPX gun to be deployed and found a genuine issue of disputed fact because the plaintiff claimed she was shot by the officer from only 10 inches away. *Id.*

The instant case involves a significantly different set of facts than those discussed by the Eighth Circuit in *Burns* and the District Court in *Dodson*. Here, Plaintiff was in the middle of a physical altercation with another inmate – which he had initiated. Defendant McGrew gave them a verbal warning to stop fighting or he would use the JPX gun, and Plaintiff admits he heard this warning. Defendant McGrew fired one burst of the JPX gun toward Plaintiff and one toward the other inmate while they were involved in a physical altercation, both being fired from at least six feet away from the inmates.

Accordingly, the Court finds Defendant McGrew's actions in using the JPX pepper spray gun on Plaintiff were objectively reasonable considering the facts and circumstances confronting him. The force used was applied in a good-faith effort to maintain or restore discipline and was not used to maliciously cause harm to Plaintiff. Therefore, Defendant McGrew is entitled to summary judgment on Plaintiff's personal capacity claim for excessive force.

**2. Official Capacity Claim – Failure to Train**

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity

claim against Defendant McGrew is treated as a claim against Sebastian County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Sebastian County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Here, Plaintiff has not presented any evidence of an unconstitutional policy or custom of Sebastian County that contributed in any way to a violation of Plaintiff's civil rights. Plaintiff's only allegation relating to official capacity liability against Defendant McGrew is that Sebastian County failed to adequately train him in the use of the JPX pepper spray gun. The summary judgment record confirms Defendant McGrew completed a JPX training course with both written

8

and field components and scored a 100%.  He received his certificate for this training on September 10, 2021.  Accordingly, the Court finds there are no facts to support an official capacity claim against Sebastian County based on failure to train Defendant McGrew in the use of the JPX pepper spray gun.[1]

## IV.   CONCLUSION

For the reasons stated, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 59) be **GRANTED** and all personal and official capacity claims against Sergeant Brian McGrew be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of October 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

---

[1] Because the Court has found that Defendant McGrew did not violate Plaintiff's constitutional rights, he is entitled to qualified immunity.